UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MILTON LUSTER,

    Plaintiff,

vs.

ILLINOIS DEPARTMENT OF CORRECTIONS,

    Defendant.

Case No. 08-1114

# O R D E R

Now before the Court is Defendant's Motion to Dismiss. For the reasons set forth below, the Motion [#27] is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff, Milton Luster ("Luster"), is an African American. He began working for the Defendant, Illinois Department of Corrections ("IDOC"), on August 8, 1988, as a Correctional Officer. Over the years, he was promoted to the position of Correctional Sergeant, Correctional Lieutenant, and Correctional Captain. Following a restructuring of the IDOC in August 2003, the position of Correctional Captain was eliminated, and Luster returned to his former position of Correctional Lieutenant. At the time relevant to this action, he was a Correctional Lieutenant at Dwight Correctional Center.

On or about June 6, 2006, Luster wrote an incident report against Christina Cole ("Cole"), a white female Correctional Officer, complaining that she had been insubordinate and referred to him as a "bitch" during a conversation earlier that day. Luster's shift

commander, Major Tamela Quinley, signed off on the incident report and forwarded it to Warden Marry Sigler.

Luster was off work from June 9, 2006, through June 10, 2006. When he returned to work on June 11, 2006, he was escorted to the Warden's Office by Assistant Warden Tamela Harris. Luster then met with Warden Sigler, who allegedly took his badge/identification and suspended him without explanation. On June 12, 2006, he received a letter from Warden Sigler officially placing him on administrative leave with pay. On August 18, 2006, he received a letter from Warden Sigler informing him that he had been discharged. Luster contends that he was discharged for writing an incident report against a white female employee, who then filed counter charges of harassment against him.

Luster filed his Complaint in the present action on February 8, 2008. His complaint was subsequently amended to allege racial discrimination in violation of Title VII (Count I), race and sex discrimination in violation of § 1983 (Count II), violation of his First Amendment right to free speech (Count III), violation of his Fourteenth Amendment rights to equal protection (Count IV) and due process (Count V), and retaliation on the basis of race in violation of Title VII (Count VI). Defendants has now moved to dismiss the Amended Complaint. Luster has filed his response, and this Order follows.

## LEGAL STANDARD

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. See Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed

broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. V. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

## DISCUSSION

### I.    Eleventh Amendment

IDOC first argues that Counts II, IV, and V are barred by the Eleventh Amendment, as a suit against a state agency is treated the same as a suit against the state itself. Plaintiff's response to this argument misses the point and borders on frivolous.

The Eleventh Amendment provides the states with sovereign immunity, precluding federal court jurisdiction over suits brought by an individual against a nonconsenting state. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). State agencies, like the IDOC, enjoy the same sovereign immunity from suit as the states themselves. Kroll v. Board of Trustees of University of Illinois, 934 F.2d 904, 907 (7th Cir. 1991). It is well-settled that the IDOC, as a state agency, cannot be sued under § 1983. Johnson v. Doe, 234 F.3d 1273, 2000 WL 1529788, at *2 (7th Cir. Oct. 10, 2000), citing Vermont Agency of Natural

Resources v. United States ex rel. Stevens, 120 S.Ct. 1858, 1866 (2000); Johnson v. Supreme Court of Illinois, 165 F.3d 1140, 1141 (7th Cir. 1999). Accordingly, the § 1983 claims asserted against IDOC in Counts II (race and sex discrimination), IV (equal protection), and V (due process) are barred and must be dismissed.

    II.    First Amendment

IDOC argues that Luster's First Amendment rights were not violated as a matter of law because he did not engage in protected speech. Specifically, Luster claims that he was engaging in protected activity when he filed an insubordination complaint against a white female officer. Paragraph 19 of the Amended Complaint states: "As a Correctional Lieutenant, Milton Luster's [sic] was required to either [sic] file documented incident reports for rule infractions and forwarded [sic] to his supervisor Major Tamela Quinley, a white female." Thus, the IDOC argues that writing and submitting the incident report that Luster has identified as his protected activity was a statement made pursuant to his official job duties as a Correctional Lieutenant and was therefore unprotected.

Luster responds that his statements regarding the conduct of a correctional officer and IDOC's failure to provide him with a fair and impartial investigation and hearing are matters of public concern that entitle him to protection under the First Amendment. However, his complaint identifies only the filing of the insubordination complaint as his protected activity and also asserts that he was "denied the right to engage in legally protected speech while performing his governmental duties." Amended Complaint, ¶¶ 93-94.

In determining whether the above conduct is protected speech under the First Amendment, the Supreme Court has established a two-step process. See Yoggerst v.

Hedges, 739 F.2d 293, 295 (7th Cir. 1984). The initial inquiry is whether the speech is a matter of public concern, for when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Connick v. Myers, 461 U.S. 138 (1983). If the speech is considered to be of public concern, then the courts must "balance the interest of the public employee, as a citizen, in commenting upon matters of public concern with the interest of the State, as an employer, in promoting effective and efficient public service." Pickering v. Board of Education, 391 U.S. 563, 571 (1968).

Public employees making statements pursuant to their official duties are not speaking as citizens for purposes of First Amendment protection, "and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Here, despite Luster's attempt to place a different spin on his internal incident report or include other conduct, it is abundantly clear that in filing the incident report, Luster was acting pursuant to his official duties as a Correctional Lieutenant; he admits as much in ¶19 of his Amended Complaint. He went to work and performed the duties that he was paid to perform, which included supervising correctional officers and reporting any rule violations by these officers.

In Garcetti, a deputy district attorney claimed that writing a memo recommending the disposition of a case based on governmental misconduct was protected activity. The Supreme Court found:

> It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. The significant point is

> that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

Id., at 422.

Such is the case with Luster, who wrote the incident report because an employee that he supervised had violated a departmental rule and been insubordinate, and that is part of what he was employed to do. A report documenting that a correctional officer had called him a "bitch" and refused to apologize after arguing with him over whether a prune was a dried grape simply cannot under any reasonable interpretation be considered anything other than an obvious form of speech made pursuant to Luster's official duties. Accordingly, in submitting the incident report regarding Cole's insubordination, he was clearly acting as a government employee rather than a private citizen speaking on an issue of political or social concern, and his speech is not entitled to First Amendment protection. Id., at 421; Houskins v. Sheehan, ___ F.3d ___, 2008 WL 4977584, at * (7th Cir. Nov. 25, 2008), *citing* Sigwworth v. City of Aurora, Illinois, 487 F.3d 506, 510-11 (7th Cir. 2007); Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007) (finding that a correctional officer's report of another officer's suspicious activity was made pursuant to the plaintiff's responsibility as a prison correctional officer to inform her superiors of a possible breach in prison policy.)

On the allegations in the Amended Complaint, the Court must conclude that Luster can prove no set of facts from which any reasonable jury could find in his favor on his First Amendment claim. As Luster has not raised his right to relief on his First Amendment claim beyond a speculative level, Count III must be dismissed.

III.   Retaliation

In Count VI of the Amended Complaint, Luster alleges that the IDOC, acting through Warden Sigler, purposefully retaliated against him because he is an African American male who filed an incident report against a white female.  Luster's response is essentially the same as his response regarding his First Amendment claim.

Retaliation can be established either directly or indirectly.  To establish retaliation under the direct method, Luster would have to "(1) offer evidence that [he] engaged in a statutorily protected activity, (2) that the defendant subjected [him] to an adverse employment action and (3) that a causal connection exists between the two events." Gates v. Caterpillar, Inc., 513 F.3d 680, 686 (7th Cir. 2008).  To establish retaliation under the indirect method, Luster must show:  "(1) that [he] engaged in protected activity; (2) that [he] was subject to an adverse employment action; (3) that [he] was performing [his] job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." Burks v. Wisconsin Dep't of Transp., 464 F.3d 744, 759 (7th Cir. 2006).

Under either method, a threshold requirement is having engaged in protected activity.  As the Court has found that Luster's conduct in preparing the incident report regarding Cole's alleged insubordination was prepared in the course of his job duties and was therefore not entitled to First Amendment protection, he necessarily fails to establish this element of his prima facie case in his retaliation claim as well.  Count VI must therefore be dismissed.

IV.   Racial Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e.[1] To make out such a claim, a plaintiff must show that he has been the victim of intentional discrimination. Rhodes v. Ill. Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004). He can make this showing using the direct or indirect method.

Under the direct method, employees may use direct or circumstantial evidence. Direct evidence is evidence that "without reference or explanation, ties the illicit motive with the adverse employment action." Lucas v. Chicago Transit Authority, 367 F.3d 714, 728 n.12 (7th Cir. 2004). Direct evidence is generally not available in employment discrimination cases because it is limited to the employer's admission of discriminatory intent. Circumstantial evidence is "evidence that allows a jury to infer intentional discrimination by the decisionmaker." Venturelli v. ARC Cmty. Servs., Inc., 350 F.3d 592, 599 (7th Cir. 2003). Using circumstantial evidence under the direct method allows an employee to present a "convincing mosaic" of circumstantial evidence that permits the trier of fact to infer intentional discrimination. Rhodes, 359 F.3d at 504.

The indirect method is also known as the McDonnell Douglas burden-shifting method. Huff v. UARCO, Inc., 122 F.3d 374, 380 (7th Cir. 1997). Under the burden-shifting method, the employee must first establish a prima facie case of discriminatory intent by proving certain elements that lead to an inference of impermissible discrimination.

---

[1] Where, as here, a claim of intentional discrimination is brought pursuant to 42 U.S.C. § 1983, the Seventh Circuit has directed courts to apply the same standards of proof as those utilized under Title VII. Steinhauer v. Degalier, 359 F.3d 481, 483 (7th Cir. 2004). Accordingly, in resolving this Motion, the Court will utilize and reference the well-established case law of Title VII.

McDonnell Douglas Corp. v. Green, 411 U.S. 792; Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 931 (7th Cir. 1996). To establish a prima facie case of discrimination, a plaintiff must show that he belongs to a protected class, that he was performing up to his employer's legitimate expectations, that he suffered an adverse employment action, and that similarly situated employees outside of the protected class were treated more favorably. Rhodes, 359 F.3d at 504; Mateu-Anderegg v. Sch. Dist. of Whitefish Bay, 304 F.3d 618, 625 (7th Cir. 2002).

IDOC argues that Luster has pled himself out of court. Specifically, they contend that the allegations in the Amended Complaint and investigational documents incorporated by reference demonstrate that the investigation had nothing to do with Luster's race or sex and was not arbitrary or capricious. IDOC further suggests that the record reveals that Luster was recommended for termination because the allegations against him that he had violated departmental rules and procedures had been proved. With all due respect, accepting Defendant's argument with respect to this claim would require the Court to assess credibility and draw inferences against the non-moving party, which is inappropriate at this stage of the litigation.

In resolving a Motion to Dismiss, all reasonable inferences must be drawn in favor of the plaintiff and all of his well-pled factual assertions must be accepted as true. Luster has alleged that he was the victim of intentional racial discrimination by the IDOC. He has alleged that the IDOC's customary investigatory process punishes African American employees for filing complaints against white employees and that he did not receive a fair and proper investigation because of that discriminatory policy. Count I of the Amended Complaint further asserts that he was an African American, was performing his job

satisfactorily, that the IDOC took an adverse action against him, and that at least one similar situated employee outside of his protect class was treated more favorably. This is all that is required to survive a motion to dismiss. Tamayo v. Blagojevich, 526 F.3d 1074, 1085 (7th Cir. 2008).

## CONCLUSION

For the reasons set forth herein, the IDOC's Motion to Dismiss [#27] is GRANTED IN PART and DENIED IN PART. Counts II, III, IV, V, and VI are DISMISSED, while the racial discrimination claim in Count I shall proceed to discovery.

ENTERED this 11th day of December, 2008.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge